Sue SUAREZ, Plaintiff,

v.

**ILLINOIS VALLEY COMMUNITY COLLEGE; John H. Knight; Lewis Cushing; Louis Borio; Alfred Wisgoski; Clement R. Jasiek; Walter Durley Boyle; Thomas L. Brandner; Sara Penfield; Dale J. McConville; Gordon Sears; and Robert Small, Defendants.**

No. 84 C 10089.

United States District Court, N.D. Illinois, E.D.

June 9, 1988.

Kenneth Kozel, Petz and Kozel, LaSalle, Ill., for plaintiff.

James P. Bartley, Bruce C. Mackey, Michael J. Dugan, Klein, Thorpe and Jenkins, Ltd., Chicago, Ill., for defendants.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Sue Suarez has filed this civil rights suit alleging that she was terminated from her secretarial position at the Illinois Valley Community College ("IVCC") because she became pregnant. Her complaint, though stated in eight counts, is brought under four substantive laws. Counts I and IV allege violations of the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k), amending Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; Counts II and V seek relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"), for violations of the Equal Protection Clause of the Fourteenth Amendment; Counts III and VI allege violations of the Illinois Human Rights Act ("IHRA"), Ill.Rev.Stat. ch. 68; and Counts VII and VIII seek relief under § 1983 for violations of the Fourteenth Amendment Due Process Clause.

The defendants are: the IVCC, a public junior college of the Illinois Valley school district;[1] John H. Knight ("Knight"), Chairman of the Department of Humanities and Fine Arts at the IVCC; Lewis Cushing ("Cushing"), of the Department of Business; Lewis Borio ("Borio"), Chairman of the Department of Biological Sciences; Alfred Wisgoski ("Wisgoski"), President of IVCC; and all members of the Board of Trustees of IVCC ("the Board"), Walter Durley Boyle, Clement R. Jasiek, Thomas L. Brandner, Sara Penfield, Dale J. McConville, Gordon Sears, and Robert Small. Plaintiff names each defendant in both his individual and his official capacities.

Defendants have moved for summary judgment on all counts in the complaint.[2] For the reasons set forth below, defendants' motion for summary judgment will be denied in part and granted in part.

FACTS

Although defendants rely on an abundance of facts in arguing that this is simply a case of an incompetent worker getting fired and crying foul, the relevant *undisputed* facts, and disputed facts resolved in *plaintiff's* favor, present a somewhat different picture.

During the summer of 1982, plaintiff was hired by Cushing, Borio and Knight as "Division Secretary" at the IVCC. The three men were to be her administrative supervisors ("the supervisors").

On October 4, plaintiff was informed that her work was not satisfactory and that, if she wanted to keep her job, she would have to improve. In the next two months, she did.

In late December, while on break for the Christmas holidays, plaintiff learned that she was pregnant. On January 3, 1983, her first day back from vacation, she informed her three supervisors of the news. Although they each congratulated her, Cushing turned to Knight and said "here we go again." Ten days later, the three supervisors informed plaintiff that they would be recommending to Wisgoski and to the Board that plaintiff be fired. In a letter to plaintiff confirming that conversation, they also indicated that she had a right to appeal their decision to Wisgoski.[3] Plaintiff chose not to do so.

---

1. Ill.Rev.Stat. ch. 122 ¶ 13–12 provides for the establishment of public junior colleges by the "board of education in any school district maintaining and offering a four-year high school course of study and having a population of less than 500,000 inhabitants...."

2. In her response to defendants' motion, plaintiff cross-moved for summary judgment. However, she did not provide a statement of undisputed facts, did not distinguish the disputed from the undisputed facts in her memorandum, and, with two exceptions, did not cite relevant judicial authority for her arguments. In light of these deficiencies, this court will dismiss plaintiff's motion, and will address only defendants' motion in the text of this Memorandum Opinion.

3. The employee manual governing plaintiff's position provided, in pertinent part:
   *Dismissal*
   An employee may be dismissed for good cause. Good cause includes, but is not limited to:
   1) Neglect of duty.
   2) Incompetence or incapacity, mental or physical.
   If dismissed, the employee is entitled to receive benefits accrued during his period of

On January 18, the three supervisors sent plaintiff another letter indicating that, as of January 21, she would be suspended without pay pending a final resolution of her status at a Board meeting on February 16.

Before the Board meeting took place, Wisgoski sent the Board members a memorandum informing the members that he and the supervisors were recommending plaintiff's dismissal. He also indicated that plaintiff had declined her appeal, and instead had hired an attorney for the purpose of making a case that she had been fired because she was pregnant.

On the day of the Board meeting, plaintiff showed up at the meeting with her attorney and demanded to attend. Her demand was denied. Two days later, she received a letter indicating that the Board had voted to terminate her employment with IVCC.

Plaintiff filed a timely complaint with the Equal Employment Opportunity Commission ("the EEOC") alleging that defendants discriminated against her because of her pregnancy, in violation of Title VII. The EEOC found no merit in the charges, and issued her notice of right to sue in federal court. This case followed.

## DISCUSSION

Before addressing the validity of each of plaintiff's substantive claims, this court is forced to address an issue that continues to vex attorneys and courts in civil rights cases. As noted above, plaintiff has alleged each substantive violation in two counts. This bifurcation is a result of plaintiff's decision to name each defendant in both his official and his individual capacities.

That plaintiff chose to name each defendant in his dual capacities, and did so in separate counts, is not itself a problem. The Supreme Court and the Seventh Circuit have repeatedly approved this method of pleading in § 1983 cases. *E.g., Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Wilson v. Civil Town of Clayton,* 839 F.2d 375 (7th Cir.1988). The problem here, however, is that plaintiff has employed the individual/official capacity dichotomy in her Title VII claims as well.

The cases in which the Supreme Court and the Seventh Circuit have clarified the distinction between individual and official capacity claims have all involved § 1983 claims alone. In such cases, naming a state actor in his individual, or personal, capacity is the appropriate method for seeking to hold that individual personally liable for his (alleged) wrongdoing; naming a state actor in his official capacity, on the other hand, is merely another way of naming the entity for which he works as a defendant in the case. The individual/official capacity distinction has become a term of art in these cases. On the other hand, its application to Title VII cases is strained.

Section 1983 imposes liability on state actors who violate constitutional rights, and on public entities as well when their policies or customs motivate the wrongdoing. *City of St. Louis v. Praprotnik,* —— U.S. ——, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The personal/official capacity dichotomy allows the § 1983 plaintiff to make clear whether she is alleging that the state actor's wrongdoing was his alone, or whether it is chargeable to the government entity as well. *See Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

Title VII has a somewhat different focus. There is no state action requirement in this statute, so a Title VII plaintiff need not prove that the defendant acted under color of state law. At the same time, however, Title VII applies only to "employers." 42 U.S.C. § 2000e(b). Thus, where the defendant in a Title VII case is an individual, he will be personally liable under Title VII only if he qualifies as an "employer" under the statute. *See Hamilton v. Rodgers,* 791 F.2d 439, 442 (5th Cir.1986) (supervisory officials may be held liable under Title VII where they act as agents of their employers because § 2000e(b) defines "employer" as a person employing more than fifteen

employment. The employee may ask that his case be reviewed by the President.

employees and any agent of such a person); *accord Tafoya v. Adams,* 612 F.Supp. 1097 (D.C.Colo.1985), *aff'd,* 816 F.2d 555 (10th Cir.1987); *Barger v. State of Kansas,* 630 F.Supp. 88 (D.Kan.1985); *Goodman v. Board of Trustees of Community College District 524,* 498 F.Supp. 1329 (N.D.Ill. 1980); *Kelly v. Richland School District No. 2,* 463 F.Supp. 216 (D.S.C.1978). Where that individual happens to be a government official, the government entity for which he works will also be liable, not because the official necessarily acted pursuant to the entity's custom or policy, but rather because the entity, as the official's employer, is also an "employer" under the statute. *See Hamilton v. Rodgers,* 791 F.2d at 442–44 (holding government entity liable under Title VII but not § 1983 for discriminatory acts of its supervisors); *see also North v. Madison Area Association for Retarded Citizens–Developmental Centers Corp.,* 844 F.2d 401 (7th Cir.1988) (employers are liable for acts of supervisory officials who are delegated authority to make hire and fire decisions). Thus, the individual/official capacity dichotomy, as developed for § 1983 claims, does not transfer neatly to the Title VII context.

Still, there is nothing inherently objectionable about permitting plaintiff here to employ the personal/official capacity terminology in seeking recovery from both the officials and the government entity in her Title VII claims. So long as the parties understand that the individual defendants will be liable in their individual capacities— i.e., personally—only insofar as they acted as employers under the statute—that is, as agents for the IVCC—and that the official capacity claims are nothing more than claims against the IVCC, the individual/official capacity dichotomy allows plaintiff to make clear in her Title VII claims, as in her § 1983 claims, that she seeks recovery from both the individuals and the government entity for which they work.

*The Title VII Claims*

In Counts I and IV, plaintiff claims that all of the defendants violated her rights under Title VII by firing her because she became pregnant. Although defendants move for summary judgment on the grounds that plaintiff's pregnancy was not the cause of their decision to fire her, they do not argue that the supervisors were not "employers"—i.e., agents of the Board— under the terms of Title VII. Thus, if there exists a genuine issue as to whether the supervisors' recommendation to the Board that plaintiff be terminated was motivated by plaintiff's pregnancy, then the motion for summary judgment on these two counts must be denied. *See Hamilton v. Rodgers,* 791 F.2d at 442–43 (where supervisors' recommendations played a "critical" role in the decision to terminate plaintiff, both the supervisors and their employer could be held liable under Title VII); *Jones v. Metropolitan Denver Sewage Disposal District,* 537 F.Supp. 966, 970 (D.Colo.1982) ("[a] person is an agent under § 2000e(b) if he participated in the decision-making process that forms the basis of the discrimination").

Defendants argue that they are entitled to summary judgment, on the grounds that the pregnancy did not cause plaintiff's termination, for two reasons: first, because the evidence establishes both that plaintiff was unqualified for her position; and, second, because the evidence demonstrates that the supervisors had decided to fire plaintiff in mid-December, before she or anyone else knew of the pregnancy.

■ The first argument indicates that defendants fail to appreciate the distinction between the indirect and the direct methods of proof in Title VII cases. The indirect, or prima facie case, method allows a Title VII "plaintiff to prevail without presenting any evidence that [the plaintiff's protected characteristic] was a determining factor in the employer's motivation ... by eliminating all lawful motivations, instead of proving directly unlawful motivation." *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409–10 (7th Cir.1984). To make out a prima facie case of discrimination under this method, plaintiff must prove, among other things, that she was doing her job well enough to meet her employer's legitimate expectations at the time she was discharged. *E.g., Grae-*

*fenhain v. Pabst Brewing Co.*, 827 F.2d 13, 17 n. 5 (7th Cir.1987); *La Montagne v. American Convenience Products, Inc.*, 750 F.2d at 1409.

■ When a Title VII plaintiff employs the direct method of proving a Title VII violation, however, this requirement does not apply. Even a plaintiff who cannot prove that she was satisfying her employer's legitimate expectations is protected by Title VII from adverse treatment based, not on her performance deficiencies, but instead on her protected traits. *See La Montagne v. American Convenience Products, Inc.*, 750 F.2d at 1409 (discussing sufficiency of direct evidence before turning to indirect evidence including, among other things, evidence of plaintiff's performance); *cf. Box v. A & P Tea Co.*, 772 F.2d 1372, 1381 (7th Cir.1985) (Swygert, J., dissenting) ("the statute prohibits in sweeping terms segregation by sex that adversely affects the individual employee"). Of course, evidence about a plaintiff's performance on the job may well play an important role in the factfinder's assessment of the plaintiff's direct case. But if there is sufficient direct evidence of discrimination for a reasonable factfinder to conclude that the defendant discriminated, the fact that the plaintiff's performance was deficient cannot keep the case from trial.

■ In this case, plaintiff relies on the direct method to prove that defendants discriminated against her. Thus, defendants' discussion of plaintiff's performance on her job is irrelevant here. The critical question at this juncture is solely whether plaintiff has come forward with sufficient evidence for a reasonable factfinder to conclude that defendants made the decision to terminate her because she became pregnant.

Defendants argue that she has not. They claim that, although plaintiff was informed of the decision to fire her ten days after her January 3 announcement that she was pregnant, the evidence establishes that the decision to fire her was made at a meeting between the supervisors and Wisgoski on December 16. This court disagrees.

The only admissible evidence that this meeting took place is the frequently vague and sometimes conflicting testimony of the (alleged) participants. There are no written records whatsoever of the meeting. And although Wisgoski is quite clear that the "meeting" was in his office and resulted in a firm decision to fire plaintiff after the Christmas holidays, the supervisors waiver on this point, with at least one of them unsure whether the so-called "meeting" was really a meeting at all, or instead a series of discussions both over the phone and in person.

Even more suspect is Cushing's reaction when plaintiff informed him she was pregnant, and his explanation for this remark. Although Cushing says that he cannot specifically remember saying "here we go again" to Knight when he learned of the pregnancy, he stated in his deposition that if he did make this statement it was probably because the pregnancy would mean they would need to replace plaintiff. This explanation is consistent with a belief on Cushing's part *either* that the supervisors would, on account of this news, soon be firing plaintiff *or* that plaintiff, like many other pregnant women at IVCC, would soon be resigning. It is *not* consistent, however, with the testimony of Cushing and the others that they had decided, more than two weeks before the outburst, to terminate plaintiff upon her return from the Christmas holidays. Clearly, whether or not the December "meeting" took place at all, and, if it did, what precisely was decided at it, are questions of fact for the factfinder.

Had defendants never raised the issue of the alleged December meeting, and instead claimed that the short span of time between plaintiff's announcement and their decision to terminate her was purely coincidental, the sufficiency of plaintiff's direct case would be questionable. The fact alone that a pregnant employee is fired shortly after becoming pregnant may not be sufficient *direct* evidence of discriminatory intent to get a plaintiff to the jury. And even Cushing's "here we go again" outburst upon learning of plaintiff's pregnancy could have been explained as his reac-

tion to an expectation that plaintiff would soon voluntarily choose to leave her employ.

However, defendants have chosen to rely for their defense on the alleged December meeting. If the finder of fact believes their testimony, it will find for them. If, on the other hand, it believes that the meeting did not take place, it will then have as evidence of discriminatory intent not only the defendants' sudden decision to terminate plaintiff, but also the defendants' multiple lies and distortions to cover up their action. On the basis of this evidence, a reasonable jury could certainly find that defendants fired plaintiff because of her pregnancy. Accordingly, defendants' motion for summary judgment on Counts I and IV will be denied.

### The Equal Protection Claims

■ Counts II and V are § 1983 claims for violations of the Equal Protection Clause of the Fourteenth Amendment.[4] Defendants argue that they are entitled to summary judgment on these counts because these claims are nothing more than "garden variety" pregnancy discrimination claims and because plaintiff has failed to set forth any facts indicating that there was a policy of discriminating against pregnant women at the school.

Defendants' first argument is not really an argument at all. The fact that the claims are "garden variety" claims of pregnancy discrimination only justifies dismissing those claims if "garden variety" pregnancy discrimination does not violate the equal protection clause. Defendants do not make such an argument, and this court will not construct one for them.[5] *See Jungels v. Pierce,* 825 F.2d 1127 (7th Cir.1987) (arguments raised but not developed need not be resolved by court).

Defendants' second argument is only marginally better than the first. Although defendants do, at least, play out their argument by maintaining that plaintiff's failure to come forward with evidence of a school policy or practice of mistreating pregnant workers mandates judgment in their favor, their line of argument in reaching this conclusion remains unclear. Do they mean that, absent a policy or practice of discrimi-

4. Counts II and V also allege substantive due process violations. That is, plaintiff claims that discrimination against pregnant women impermissibly interferes with their substantive due process rights to freedom of personal choice in matters of family life. The Supreme Court's opinion in *Cleveland Board of Education v. La-Fleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (mandatory maternity leave rules violated substantive due process rights), suggests that these claims have merit.

Yet, plaintiff did not respond at all to defendants' argument that "garden variety" pregnancy discrimination does not implicate substantive due process rights. Thus, through her silence, plaintiff asks this court to construe perhaps the most controversial of all constitutional provisions without any assistance from her, and without the opportunity for defendants to counter any arguments she might have.

Whether or not plaintiff has waived her substantive due process claims is questionable. In any case, since there appears no practical difference between plaintiff's substantive due process and equal protection claims, *see Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 651, 653 n. 2, 94 S.Ct. 791, 801, 803 n. 2, 39 L.Ed.2d 52 (1974) (Powell, J., concurring) (arguing that the case should have been decided on equal protection grounds), this court will not rule on the substantive due process claims at this time.

5. Any such argument would, in all likelihood, be doomed. In *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), the Supreme Court held that, absent a showing that a state's differential treatment of pregnant women is a pretext for gender discrimination, the Equal Protection Clause provides no greater protection for pregnant women than it does for any other non-suspect class. *Id.* at 496–97 n. 20, 94 S.Ct. at 2491–92 n. 20; *see id.* at 503, 94 S.Ct. at 2495 (Brennan, J., dissenting). That holding in no way, however, suggests that state officials may, consistently with the Equal Protection Clause, arbitrarily fire a woman because she becomes pregnant. On the contrary, the Equal Protection Clause protects all individuals from differential treatment based upon their membership in a distinct class where the differential treatment is not, at least, rationally related to a legitimate government objective. *See Brown v. Sibley,* 650 F.2d 760 (5th Cir.1981) (visually impaired workers could not recover for equal protection violations where preventing them from rising to supervisory positions was rationally related to legitimate state interest). Since defendants have not identified any government interest which would be served by firing a pregnant employee simply because she becomes pregnant, their decision to do so would run afoul of the Equal Protection Clause.

nating against all members of a particular class, an individual in that class cannot make an equal protection claim? Or do they mean that, because plaintiff cannot establish an ongoing policy or practice of discrimination on the part of the college, the official capacity defendants—i.e., the government entity itself—cannot be held liable irrespective of the liability of the individual defendants? It does not matter, for whichever argument defendants meant to make, they are wrong.

Although it is true that the Equal Protection Clause protects individuals from discrimination based upon their classification in a larger group, *Huebschen v. Department of Health and Social Services,* 716 F.2d 1167 (7th Cir.1983), it is equally true that discrimination against only some members of that group falls well within the scope of the Clause. *Volk v. Coler,* 845 F.2d 1422, 1433 (7th Cir.1988). The fact that defendants did not discriminate against other pregnant women will undoubtedly be important evidence for the defense in arguing that they did not fire plaintiff on the basis of her pregnancy. It does not, however, immunize defendants from liability if the jury decides that pregnancy was a motivating factor in the discharge.

Nor does the absence of an ongoing policy of discrimination against pregnant women mandate judgment for the defendants in their official capacities. In *City of St. Louis v. Praprotnik,* —— U.S. ——, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the Supreme Court held that the government entity could not be held liable for an unconstitutional employment decision by an official who did not have the authority to make government policy. It left undisturbed, however, its decision in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), that the government entity could be held liable for "a single decision taken by the highest officials responsible for setting policy in that area of

the government's business." *City of St. Louis v. Praprotnik,* 108 S.Ct. at 923. When government officials with final policymaking authority sanction or order an unconstitutional act, the act is one "for which the municipality itself is actually responsible." *Id.; City of St. Louis v. Praprotnik,* 108 S.Ct. at 931–32 (Brennan, J., concurring) ("[W]e [have never] doubted that a single decision of a city's properly constituted legislative body is a municipal act capable of subjecting the city to liability."); *City of Springfield, Massachusetts v. Kibbe,* 480 U.S. 257, 107 S.Ct. 1114, 1120–21, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting from dismissal of writ as improvidently granted) (arguing that Court should have heard the case to determine whether gross negligence on the part of policymaking officials can give rise to municipal liability, but conceding that, in any case, deliberate indifference to the unconstitutional acts of lower level government officials would suffice to impose liability on the municipality); *see also Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

In this case, defendant does not dispute that the Board was the final policymaking authority for the IVCC. Plaintiff has set forth facts which could support a finding that the supervisors violated the Equal Protection Clause by seeking plaintiff's dismissal because she became pregnant. Plaintiff has also demonstrated, through the letter from Wisgoski to the Board, that the Board was aware of plaintiff's allegations of discrimination and yet went ahead with the termination without any independent investigation to determine the validity of those allegations. From these facts, a jury could find that, at the very least, the Board was deliberately indifferent to the unconstitutional acts of the supervisors, and, accordingly, that the IVCC is liable for these acts.[6]

---

**6.** Plaintiff also argues as a basis for holding the IVCC liable that a provision in the employee manual requiring pregnant employees to inform their supervisors of the pregnancy at least five months prior to the time they intended to take

maternity leave was unconstitutional. Yet, plaintiff does not explain, or provide any authority to support, her argument that this provision was unconstitutional. Accordingly, this

Accordingly, defendants' motion for summary judgment on Counts II and V will be denied.

*The Illinois Human Rights Act Claims*

■ Counts III and VI allege civil rights violations under Illinois statutory and common law. Defendants argue that they are entitled to summary judgment on these counts because plaintiff failed to exhaust the administrative remedies of the IHRA. They are right.

Although plaintiff concedes that it did not pursue its state law claims through the procedures established by the IHRA, she argues that she is excused from having done so because, after filing a complaint with the Illinois Human Rights Commission ("the Illinois Commission"), her attorney was (orally) informed that the Illinois Commission would not take any action on her case because of her pending claim with the EEOC.

Yet, filing a complaint with the Illinois Commission is not the proper procedure for bringing an action under the IHRA. Under the IHRA, a plaintiff may institute a civil rights action only by filing a *charge* with the *Illinois Department of Human Rights* ("the Department"). *Scott v. Sears, Roebuck & Co.*, 605 F.Supp. 1047 (N.D.Ill.1985); *Zewde v. Elgin Community College*, 601 F.Supp. 1237, 1250–51 (N.D.Ill. 1984); *see also Armstrong v. Freeman United Coal Mining Co.*, 112 Ill.App.3d 1020, 68 Ill.Dec. 562, 446 N.E.2d 296 (1983) (complaint alleging retaliatory discharge must be pursued through the administrative provisions of the IHRA). Since plaintiff failed to do so, judgment against her on her state law claims must be granted.

*The Procedural Due Process Claims*

■ Counts VII and VIII are § 1983 claims for alleged violations of plaintiff's rights to due process of law. Plaintiff claims that defendants deprived her of property without due process by firing her from her job without a pre-termination hearing. To prevail on these claims, plaintiff must prove the following: (1) That state law gave her a property interest in

her job at the IVCC; and (2) that the procedures employed by the IVCC in depriving her of this property interest did not meet the "minimum [procedural] requirements ... of federal law." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985) (quoting *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980).

Defendant does not dispute, and this court will assume, that the employee manual's provision that an employee in plaintiff's position could only be terminated for "good cause" gave plaintiff a protectable property interest in her job. *Suckle v. Madison General Hospital*, 499 F.2d 1364, 1366 (7th Cir.1974) (where defendant does not contest that plaintiff had a property interest, court may assume that such an interest existed); *see also Jungels v. Pierce*, 825 F.2d 1127 (7th Cir.1987) (statute providing that mayor could fire for good cause at his discretion, though subject to doubt as to meaning, did create protectable property interest, absent evidence that practice was for mayor to fire at his will). Thus, the only remaining question is whether the IVCC's procedures for firing plaintiff satisfied the mandates of federal law.

In *Loudermill*, the Supreme Court made clear that before a public employee may be deprived of a property right in his job, the state must provide him with "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 105 S.Ct. at 1495. In addition, "at a meaningful time" either before or after the deprivation, the state must provide the employee with an evidentiary hearing, including the opportunity to confront and cross-examine adverse witnesses and to present witnesses on her own behalf. *Id.* at 1496; *Id.* at 1497 (Marshall, J., concurring).

In this case, plaintiff claims that she was deprived of the requisite termination procedures because she was not informed of the basis for the supervisors' decision to rec-

court will ignore this portion of plaintiff's argu-                    ment.

ommend her dismissal until after the February 16 Board meeting, and because she was denied an opportunity to attend that meeting, confront the witnesses against her and present her own side of the story. The problem with plaintiff's argument is that, by failing to appeal to Wisgoski the supervisors' decision to recommend her dismissal, *she* deprived the *IVCC* of the opportunity to provide her the procedural safeguards required by federal law.

In *Suckle v. Madison General Hospital,* 499 F.2d 1364, 1366 (7th Cir.1974), the Seventh Circuit held that a plaintiff cannot prevail on a due process claim when the government provides her with procedures that could have satisfied federal mandates but the plaintiff fails to pursue those procedures. The Court first noted that the fact that administrative regulations setting forth the procedures for a property deprivation do not spell out constitutionally sufficient procedures does not amount to a due process violation, so long as constitutionally sufficient procedures are actually provided. The court then reasoned that, where the plaintiff refuses to pursue the procedures that are set forth in the regulations, and fails to request the additional procedures she desires, a court cannot know whether constitutionally sufficient procedures would have been forthcoming.

*Suckle* controls this case. As noted earlier, plaintiff received a letter, dated January 13, from the supervisors which indicated that they would be recommending her dismissal effective January 21, 1988, and that, "[i]n accordance with procedures in the Classified Staff Handbook" she had a right to appeal their decision to "Dr. Al Wisgoski, President of the College." Plaintiff did not appeal to Wisgoski.[7] Nor did she notify Wisgoski or the Board of her desire to see the charges on which the supervisors' recommendation was based, or of her intention to appear at the February 16 Board meeting. Thus, this court cannot tell whether the IVCC would have provided plaintiff with a pre-termination hearing,

and what the pre-termination hearing would have entailed.

What this court does know is that the IVCC refused to give plaintiff the precise hearing she demanded, at the precise moment she demanded it. Such a refusal does not transgress any constitutional mandate of which this court is aware. Accordingly, defendants are entitled to summary judgment on Counts VI and VIII.

*The Qualified Immunity Defenses*

Defendants have also moved for summary judgment on the individual capacity counts—Counts IV, V, VI and VIII—on the grounds that the individual defendants are entitled to qualified immunity for their actions. Since judgment will be entered for them on Counts VI and VIII for the reasons discussed above, this court need only address the qualified immunity arguments for Counts IV and V.

■ Defendants base their qualified immunity defenses on the grounds that they acted "in good faith and within the scope of the[ir] duties" in firing plaintiff. They cite as support for their position *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Yet, that case, which made subjective good faith an element of qualified immunity, no longer governs the qualified immunity defense. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court began a new era in qualified immunity law, holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Thus, the only question this court need answer in resolving defendants' qualified immunity argument is whether it was clearly established at the time plaintiff was fired that discriminating against pregnant women violates constitutional and statutory law. *Wrigley v. Greanias,* 842 F.2d 955 (7th Cir.1988). It was.

---

**7.** Although plaintiff claims, in her memorandum in opposition to the summary judgment motion, that she did appeal to Wisgoski by discussing her case with him, she provides no evidentiary support for this claim.

**386**

## CONCLUSION

Defendants' motion for summary judgment is denied on Counts I, II, IV and V, but granted on Counts III, VI, VII, and VIII.