**Robert L. WALSH, Plaintiff,**

v.

**The CITY OF CHICAGO, et al., Defendants.**

**No. 87 C 3336.**

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1988.

---

John P. DeRose, John P. DeRose and Associates, Chicago, Ill., for plaintiff.

Maria C. Campo, Asst. Corp. counsel, Judson H. Miner, Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Robert L. Walsh began work as a police officer for the City of Chicago in April 1981. On November 6, 1985, Walsh signed a letter stating that he was resigning. Walsh claims that he signed this letter against his will. He contends further that the actions of various members of the Chicago Police Department prior to his purported resignation and the response of the Department to his attempts to withdraw his letter violated a variety of federal and state laws, and thus deprived him of his rights. The City of Chicago, Superintendent Fred Rice, Jr., Assistant Deputy Superintendent Leonard Zaleski, and Director Joseph P. Beazley of the Department's Personnel Division have moved to dismiss all of Walsh's claims under Rule 12(b)6, Fed.R. Civ.P.

The following facts are taken from Walsh's complaint, which this court accepts as true for purposes of the defendants' motion. On November 6, 1985, Walsh re-

ceived orders to leave his station at Chicago's 8th Police District. He was met by Sergeants Paul L. Tasch, Jr. and George Leslie, who acted pursuant to the orders of Lieutenant Robert T. Curry and Superintendent Rice. Curry, Tasch, and Leslie are members of the Department's Internal Affairs Division (IAD). Tasch and Leslie transported Walsh to the Medical Section of the Department, where they advised Walsh that he was being charged with possession and use of cocaine. At some point they gave Walsh written notice of these charges, which had been filed by another IAD officer, Sergeant Robert Zdora. Walsh claims that Tasch and Leslie knew or should have known that the charges were false.

The sergeants advised Walsh that he had the right to consult with an attorney and to have that attorney present when Walsh answered the charges against him. Walsh told Tasch and Leslie that he wanted to talk with a lawyer before they asked him any questions, and signed a request to secure legal counsel for a subsequent hearing. Walsh was then ordered to urinate into a cup, which Walsh did in the presence of Tasch. The Department later analyzed Walsh's urine and found no traces of illicit drugs. Walsh claims, however, that IAD ordered, directed, and compelled unannounced, warrantless physical examinations such as the one given to Walsh, and that Superintendent Rice knew about and consented to the practice.

After Walsh had given a specimen of his urine, Curry, Tasch, and Leslie directed Walsh to a small office. Once in the office, Curry, Tasch, and Leslie threatened to prosecute Walsh unless he resigned from the Department. They told Walsh that Sergeant Zdora and Officer Patricia Kane had Walsh's wife in the lockup at Police Headquarters, and that she had given them evidence that Walsh was a drug dealer. These statements were false. Nevertheless, the officers refused to tell Walsh where his three children were unless he signed a letter of resignation, and denied Walsh's repeated requests for an attorney. As a result of these pressures, Walsh signed the letter.

Walsh claims that it was and is the regular practice and procedure of Curry and other IAD officers to coerce the resignations of police officers without affording them counsel or an opportunity to have a hearing. Walsh also accuses Curry, Zdora, and Kane of filing false reports. Two days after he signed his letter of resignation, Walsh addressed a letter to Curry and the Administrator of the Department's Personnel Division advising them that he felt his resignation had been unfairly coerced. Walsh requested a hearing. On November 19, 1985, Assistant Deputy Superintendent Zaleski wrote back to Walsh. Zaleski stated that he felt that Walsh's resignation was voluntary and without coercion, and that he would recommend that the resignation "remain." Walsh alleges that Zaleski made this recommendation to Rice, knowing full well that Curry and IAD officers under Curry's command were employing coercion to obtain resignations.

By this point Walsh had employed an attorney, who wrote to Zaleski demanding a formal hearing. Beazley, as director of the Personnel Division, responded to Walsh on December 6, 1985 that no procedure existed for a hearing, and that Walsh could choose to reapply to the Department if he so desired. Walsh chose instead to file this suit on April 9, 1987.

The most complex part of Walsh's complaint is Count 1, which Walsh brings under 42 U.S.C. § 1983 (1982). Walsh alleges in Count 1 that Rice and the City of Chicago had the duty to promulgate rules concerning due process for officers who have resigned or have been terminated, or are in the process of resignation or termination. Walsh alleges further that, if there were such rules, Rice and the City did not enforce them, or they were insufficient to prevent IAD from coercing Walsh into resigning. Walsh also contends that the defendants did not afford him a pre-termination hearing, and that he never committed acts sufficient for termination. Walsh claims that the defendants deprived him of liberty and property without due process of law, in violation of the Fifth and Fourteenth Amendments to the Constitution.

He also claims that these acts violated his rights under the Sixth, Ninth, and Tenth Amendments to the Constitution, as well as his right to equal protection of the laws under the Fourteenth Amendment.

Walsh's other claims are more straightforward. Count 2 is another § 1983 claim, one where Walsh alleges that there was a conspiracy to deprive him of his Fifth, Sixth, and Fourteenth Amendment rights. Counts 3–6 are pendent state law claims for intentional infliction of emotional distress, duress, slander, and breach of contract.

■ The defendants have raised a number of arguments in favor of dismissing all of Walsh's counts, but since Counts 1–2 are the only claims that arise under the laws and Constitution of the United States, this court will address the attacks on them first. The City of Chicago argues first that Walsh has failed to allege the existence of an official policy that led to his injuries, which is the only way that the City could be held liable for the acts of its employees. See *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 922–24, 99 L.Ed.2d 107 (1988); *Suarez v. Illinois Valley Community College*, 688 F.Supp. 376, 383 (N.D.Ill.1988). The City exhaustively argues that it cannot be held liable on a theory of respondeat superior, a theory upon which Walsh relies at several places in his complaint. See, for example, Complaint ¶¶ 23, 59–60, 65.

Were respondeat superior the sole basis for Walsh's contention that the City is liable for the actions surrounding his resignation, this court would have no choice but to dismiss Counts 1–2 as to the City. But Walsh's complaint, taken as a whole, alleges more than that. In ¶ 19 of the Complaint, Walsh states that at all times Zdora, Tasch, Leslie, and Kane were acting pursuant to the orders and directions of their superiors, Lieutenant Curry and Superintendent Rice. The City rightly observes that Curry does not have the power to establish policy for the City; it fails to contest Rice's power to do so. Yet that is what Walsh alleges. Similarly, in ¶ 22 Walsh states the City "maintained, permit-

ted and allowed impermissible policies and procedures whereby [Rice] dictated, approved and implemented a policy whereby Officers of [IAD] would threaten, cajole and intimidate" Chicago police officers to resign. Walsh need not allege anything more than this to survive the City's motion to dismiss.

■ The defendants whom Walsh sues in their official capacity make similar arguments against Counts 1–2. It is not clear from the complaint who these officials are (as opposed to those whom Walsh sues in their individual capacities), but this court infers from Walsh's response to the defendants' motion that he has sued only three persons in their official capacities: Rice, Zaleski, and Beazley. These defendants claim that Walsh has not alleged that they set official policy in this case. This court agrees with this contention only in part. As examined above, Walsh has alleged in at least two places in his complaint that Rice set policies. This is not true, however, for defendants Zaleski and Beazley. Nowhere has Walsh alleged that they had authority to set Department or City policy, and so this court dismisses the § 1983 claims brought against them in their official capacities.

■ Rice, Zaleski, and Beazley next argue that they cannot be held individually liable for the acts charged in Walsh's § 1983 claims. As this court noted in *Suarez*, 688 F.Supp. at 379, in order for a plaintiff to sue someone in that person's individual capacity, the plaintiff must allege that the individual committed a wrong. Walsh alleges several times in his complaint that Rice participated in forcing Walsh to resign, as noted above. As for Zaleski, Walsh alleges that Zaleski reviewed his resignation and recommended to Rice that it should stand, despite knowing full well that Lt. Curry and IAD employed improper tactics to obtain it. See Complaint at ¶ 54 and Exhibit E. Walsh has thus alleged individual wrongs on the part of Rice and Zaleski. By contrast, Walsh's only allegation with respect to Beazley is that Beazley wrote him a letter with bad news. Walsh never claims that Beazley is

responsible for the Department's alleged lack of review procedures for resignations, and the letter implies nothing to the contrary. See *id.*, Exhibit G. This court thus dismisses Walsh's § 1983 claims against Beazley in his individual capacity.

 Having determined that Walsh has made sufficient federal claims against most of the defendants, this court now turns to the attacks on Walsh's state claims. The City, Rice, Zaleski, and Beazley argue first that Walsh cannot bring his state tort claims, contained in Counts 3–5, because he has failed to comply with Ill.Rev.Stat. ch. 85, ¶ 8–102 (1983), repealed, 1986 Ill. Laws P.A. 84–1431. That provision reads:

Within 1 year from the date that the injury or cause of action ... was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must serve ... a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement signed by himself, his agent or attorney....

Section 8–103 of the same chapter states:

If the notice under Section 8–102 is not served as provided therein, any such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing.

While Walsh did not raise the argument, this court notes that these provisions apply only to suits brought against municipal employees in their official capacities. See *Santella v. Grishaber*, 672 F.Supp. 321, 325–26 (N.D.Ill.1987). As it is, Walsh did not give the City notice of this suit until he filed it on April 9, 1987. This was nearly seventeen months after his causes of action accrued, and thus he cannot bring Counts 3–5 against the City, nor against Rice, Zaleski, or Beazley in their official capacities.

 This still leaves Counts 3–5 against Rice, Zaleski, and Beazley in their individual capacities. The court finds two of these counts wanting. Count 3, Walsh's claim of intentional infliction of emotional distress, contains conclusory allegations about the severity of the officers' conduct and the distress that he suffered. Greater particularity is required with respect to this allegation, and so the court dismisses it. In Count 4, Walsh brings a claim of "duress," but nowhere does he indicate that Illinois recognizes such a tort. The court thus dismisses it too. Only Walsh's fifth count, one for slander, begins to establish the necessary elements of the tort alleged, but it is defective on another ground: Walsh attributes no slanderous statements to Rice, Zaleski, or Beazley. Therefore, this court dismisses Count 5 against Rice, Zaleski, and Beazley in their individual capacities.

Next the court turns to Count 6, where Walsh alleges a breach of the contract between the City and the Fraternal Order of Police, Chicago Lodge No. 7, dated July 19, 1984. The City states that Walsh failed to submit to binding arbitration as set forth in the contract, and thus contends that Walsh cannot sue for its breach. Unfortunately, neither party has submitted enough of the contract to decide which side is correct. Walsh attached three pages of the contract to his complaint, see Complaint, Exhibit H, but these pages do not discuss binding arbitration. Thus, for the moment, this court must deny the City's motion to dismiss Count 6.

 Last, the City, Rice, and Zaleski (the latter two, in their official capacities) ask this court to dismiss all of Walsh's claims against them for punitive damages. At this point only two counts remain in which Walsh seeks punitive damages: Counts 1–2, the § 1983 claims. Punitive damages are not available against the City on them. See *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed. 2d 616 (1981) (punitive damages unavail-

able from municipalities under § 1983). As for Rice and Zaleski, the Supreme Court has noted that officials facing suit in their official capacity can claim the same immunities available to the entity that they represent. See *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). For this reason, Walsh cannot claim punitive damages from Rice and Zaleski in their official capacities under § 1983.

In summary, this court grants defendants Zaleski and Beazley's motion to dismiss Counts 1–2 with respect to claims brought against them in their official capacities. This court grants Beazley's motion to dismiss the Count 1–2 claims brought against him in his individual capacity, and grants the motion of the City, Rice, Zaleski, and Beazley to dismiss Counts 3–5. This court also grants the motion of the City to dismiss all remaining claims against it for punitive damages, as well as the motion of Rice and Zaleski to dismiss all remaining claims against them in their official capacities for punitive damages. All other motions of these defendants are denied.