Bernard C. WANNER, Edward L. Marcotte and Harlan C. Counter,
Plaintiffs,

v.

STATE OF KANSAS, Department of Administration and Edward A. DeVilbiss, Defendants.

No. 89–4046–R.

United States District Court,
D. Kansas.

June 28, 1991.

K. Gary Sebelius, Catherine A. Walter, Davis, Wright, Unrein, Hummer & McCallister, Topeka, Kan., for plaintiffs.

Malcolm R. Burns, Lawrence, Kan., Billy E. Newman, Kansas Dept. of Admin., Linda J. Fund, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action brought by three former employees of the State of Kansas pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Kansas Age Discrimination in Employment Act (KADEA), K.S.A. 44–1111 *et seq.* The plaintiffs were employed in the Department of Administration and all contend that they were terminated from their employment because of their age. The defendants are the State of Kansas; the Department of Administration; and Edward A. DeVilbiss, the Director of the Division of Architectural Services within the Department of Administration. This matter is presently before the court upon defendants' motion for summary judgment.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the adverse party. *Barber v. General Electric Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir. 1981). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)).

██ The defendants contend initially that defendant DeVilbiss is not a proper defendant to plaintiffs' ADEA claims because he is not an employer under the ADEA. Plaintiffs contend that DeVilbiss is an employer under the ADEA based on an examination of the legislative history of the ADEA, case law under the ADEA, and case law from Title VII actions.

The question presented by the arguments of the parties is whether an agent of a political subdivision of a state is an employer under the ADEA. The term "em-

ployer" under the ADEA means "a person engaged in an industry affecting commerce who has twenty or more employees ... [and] (1) any agent of such a person, and (2) a State or political subdivision of a State...." 29 U.S.C. § 630(b). Title VII, on the other hand, defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." 42 U.S.C. § 2000e. The statutes provide further definitions of the term "person." The ADEA's definition of "person" does not include states and their subdivisions, 29 U.S.C. § 630(a), while Title VII's definition of "person" does include political subdivisions, 42 U.S.C. § 2000e(a).

In *Ditch v. Board of County Commissioners*, 650 F.Supp. 1245 (D.Kan.1986), *modified on other grounds*, 669 F.Supp. 1553 (D.Kan.1987), Judge Saffels examined the differences in the definitions of the two statutes and concluded that state employees were not employers within the meaning of the ADEA. He reasoned as follows:

> Title VII's definition of employer includes a person engaged in an industry affecting commerce *and any agent of such a person.* Title VII's definition of person includes political subdivisions. Therefore, it is no great revelation to hold that agents of political subdivisions, such as the county commissioners in this case, can be held personally liable as employers under the statute. In fact, such a holding makes perfect sense and is mandated by the language of the statute. However, to find no distinction between the Title VII and the ADEA definitions of employer simply because of the policy behind the statutes borders on judicial activism in its plainest sense. In enacting the ADEA, Congress explicitly excluded states and their political subdivisions from the definition of person, opting rather to include them as a separate and distinct category of employer. Within one sentence, Congress established the separate and distinct liability of (1) agents of persons and (2) states and political subdivisions. Congress made no provision for agents of states and political subdivisions. It would have only re-

quired the insertion of the short phrase "and their agents" in 29 U.S.C. § 630(b)(2) to express Congress' intent to hold individuals such as these defendants liable for age discrimination. If ever the maxim *expressio unius est exclusio alterius* is applicable, it is this situation. This court cannot invalidate the express terms of a federal statute under the guise of applying a policy of liberal construction, regardless of the ultimate ends that would be furthered. (citations omitted and emphasis in original).

650 F.Supp. at 1251.

Although this court is not totally satisfied with this result, we are inclined to follow Judge Saffels' conclusion. Although similar, the definition provisions of Title VII and the ADEA are not identical, and unlike the comparable Title VII provision, the ADEA does not include agents of state agencies within the definition of "employer." In order to follow plaintiffs' contention, the court would be forced to rewrite the ADEA statute. This is a job for Congress, not for this court. Other judges, including Judge Theis of this district, have also concluded that agents of a state or a political subdivision are not employers within the meaning of 29 U.S.C. § 630(b). *Tranello v. Frey*, 758 F.Supp. 841, 851–52 (W.D.N.Y.1991); *Sagarino v. Town of Danvers*, 750 F.Supp. 51, 52 (D.Mass.1990); *Price v. County of Erie*, 654 F.Supp. 1206, 1207 (W.D.N.Y.1987); *Young v. Sedgwick County*, 660 F.Supp. 918, 924 (D.Kan.1987); *McCroan v. Bailey*, 543 F.Supp. 1201, 1210–11 (S.D.Ga.1982). *Contra: Coffin v. South Carolina Dept. of Social Services*, 562 F.Supp. 579 (D.S.C.1983); *Goodman v. Board of Trustees*, 498 F.Supp. 1329 (N.D. Ill.1980). In sum, the court finds that defendant DeVilbiss must be dismissed as a defendant to plaintiffs' ADEA claims.

■ With the dismissal of plaintiffs' ADEA claims against defendant DeVilbiss, we must consider defendants' argument that the court lacks jurisdiction to consider plaintiffs' KADEA claims against DeVilbiss. This requires the court to examine the concept of "pendent-party jurisdiction." Pendent-party jurisdiction involves claims

against "parties not named in any claim that is independently cognizable by the federal court." *Finley v. United States*, 490 U.S. 545, 549, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989). In *Finley*, the Supreme Court held that the exercise of pendent-party jurisdiction required that the text of the jurisdictional statute at issue establish a basis for the pendent-party jurisdiction. *Id.* at 552, 109 S.Ct. at 2008. This court is unable to find an independent basis for pendent-party jurisdiction under the jurisdictional section of the ADEA. *Constant v. Continental Telephone Co. of Illinois*, 745 F.Supp. 1374, 1388 (C.D.Ill. 1990). Accordingly, plaintiffs' pendent state claims under the KADEA against defendant DeVilbiss must be dismissed. With this decision, the court need not consider defendants' additional argument that defendant DeVilbiss is not a proper defendant to plaintiffs' claims under the KADEA.

The defendants next contend that plaintiff Wanner is not entitled to protection under the ADEA because he was not an "employee" as defined by the ADEA. Defendants assert that Wanner was not an "employee" because he was excluded from coverage under the ADEA as an appointee on the policymaking level not subject to the civil service laws of the State of Kansas. Wanner responds that the record demonstrates that he was an employee covered by the ADEA.

The ADEA defines "employee" as follows:

The term "employee" means an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision.

The term "employee" includes any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country.

29 U.S.C. § 630(f).

The defendants have analyzed this definition and concluded that the following four classes of individuals are exempted from the definition: (1) any person elected to public office; (2) any person chosen by such officer to be on such officer's personal staff; (3) an appointee on the policymaking level; and (4) an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. Thus, defendants argue that Wanner, as "an appointee on the policymaking level," is exempted from coverage of the ADEA. Wanner, on the other hand, suggests that the ADEA has exempted the following four classes of individuals: (1) an elected public official; (2) any person chosen by an elected official to be on his personal staff; (3) any person appointed by an elected official to a policymaking position; and (4) an immediate advisor to an elected official regarding the exercise of the constitutional or legal powers of the elected office.

The defendants have offered no support for their interpretation of 29 U.S.C. § 630(f). The defendants rely solely on a statutory construction argument. Wanner relies upon a Tenth Circuit opinion, *Anderson v. City of Albuquerque*, 690 F.2d 796 (10th Cir.1982), in which the court considered a definition of employee identical to that used in the ADEA in a Title VII case and concluded that the staff director for the Albuquerque Human Rights Board was not exempt from Title VII coverage because he had not been appointed by an elected official.

The facts pertinent to this issue show that Wanner was hired by the State of Kansas on July 15, 1971. He was appointed/promoted to the position of Assistant Director of the Division of Architectural Services on December 1, 1974. He was appointed/promoted to this position by the Director of Architectural Services, who is not an elected official. The position of

Assistant Director of Architectural Services constitutes unclassified service under the Kansas Civil Service Act. Any appointment to unclassified service is subject to the approval of the governor, and compensation for such appointments shall not be paid until approved by the governor. Positions in unclassified service are exempt from the progressive discipline, review and other provisions of the Kansas Civil Service Act.

■ We must begin with the question of whether the definition of employee under the ADEA includes an appointee on the policymaking level who is not appointed by an elected official. We find that it does. This court has not found a single decision in which the definition of employee as found in the ADEA or in an identical definition contained in Title VII has been interpreted in the manner suggested by the defendants. In the decisions discovered by this court, the courts have concluded that the ADEA only excludes coverage for appointees on the policymaking level chosen by elected officials. *See, e.g., EEOC v. State of Vermont*, 904 F.2d 794 (2d Cir. 1990); *Stillians v. State of Iowa*, 843 F.2d 276 (8th Cir.1988); *EEOC v. Board of Trustees of Wayne County Community College*, 723 F.2d 509 (6th Cir.1983). Recently, in *Gregory v. Ashcroft*, —— U.S. ——, ——, 111 S.Ct. 2395, 2412, 115 L.Ed.2d 410 (1991), Justice White, in a concurring and dissenting opinion, analyzed 29 U.S.C. § 630(f) as follows:

> A parsing of that definition reveals that it excludes from the definition of "employee" (and thus the coverage of the ADEA) four types of (non-civil service) state and local employees: (1) persons elected to public office; (2) the personal staff of elected officials; (3) *persons appointed by elected officials to be on the policymaking level;* and (4) the immediate advisers of elected officials with respect to the constitutional or legal powers of the officials' offices. (emphasis added).

After considering the aforementioned decisions, including the Tenth Circuit's decision in *Anderson* construing an identical definition of employee under Title VII, the court rejects the defendants' construction of 29 U.S.C. § 630(f). Wanner is provided coverage under the ADEA because he was not appointed to the position of Assistant Director of the Division of Architectural Services by an elected official. Given this decision, the court need not decide whether Wanner was in a policymaking position.

The defendants next contend that plaintiff Counter has failed to establish a *prima facie* case of discrimination under either the ADEA or the KADEA. Defendants argue that the evidence shows that Counter's position was eliminated upon his termination. Accordingly, defendants assert that Counter cannot demonstrate that his position was refilled by a younger person.

Counter contends that there is no legal authority for the position taken by the defendants. He argues that he has established a *prima facie* case because the evidence shows that he was terminated under circumstances which give rise to an inference of age discrimination.

In analyzing employment discrimination cases, the Supreme Court has encouraged the lower courts to use the three-step process first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972) and later refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, the plaintiff must establish a *prima facie* case of discrimination. *Burdine*, at 253, 101 S.Ct. at 1093. In *McDonnell Douglas*, the Court stated one method for establishing a *prima facie* case of race discrimination under Title VII where a job application is rejected is for the plaintiff to show: (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualification, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824. Once a *prima facie* case of discrimination has been established, the burden shifts to the employer to artic-

ulate a legitimate, non-discriminatory reason for the actions taken. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094. If the employer is able to do so, then the burden shifts to the employee to prove by a preponderance of the evidence that the legitimate justification offered by the employer is merely a pretext for discrimination. *Id.* at 256, 101 S.Ct. at 1095. The Supreme Court, however, has consistently reminded the lower courts that the ultimate question is whether the employer intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

The court finds that the defendants have taken an overly restrictive view of the use of the *prima facie* case in considering Counter's age discrimination claim. The *McDonnell Douglas prima facie* test was never meant to be "rigid, mechanized, or ritualistic." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). The purpose of the test was merely to provide a method by which a plaintiff could establish an inference of discrimination. It was never intended to be the exclusive method for proving discrimination. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Courts, in ADEA cases, have repeatedly emphasized that a literal application of the *McDonnell Douglas prima facie* case is neither required nor practical. *See, e.g., Grubb v. W.A. Foote Memorial Hospital, Inc.*, 741 F.2d 1486, 1497 (6th Cir.1984), *vacated on other grounds*, 759 F.2d 546 (6th Cir.1984); *DeHues v. Western Electric Co., Inc.*, 710 F.2d 1344, 1347 (8th Cir.1983); *Pace v. Southern Railway System*, 701 F.2d 1383, 1386 (11th Cir.1983), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 239 (4th Cir.1982). The use of the *McDonnell Douglas* test is helpful, but not determinative. A plaintiff is not precluded from making a *prima facie* case simply because he cannot prove one of the elements of the *McDonnell Douglas* test. *Perry v. Kunz*, 878 F.2d 1056, 1058 (8th Cir.1989). A plaintiff need only establish that he was adversely affected by the defendant's employment decisions "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

In viewing the evidence in the light most favorable to Counter, we find that he has established a sufficient *prima facie* case. The facts show that Counter, who was 63 years old at the time of his termination, was satisfactorily performing his job duties prior to termination. They further show that, although his position was eliminated, many of his responsibilities were assumed by a younger person with less qualifications. Finally, there is evidence that defendant DeVilbiss, the individual who terminated Counter, was concerned with the number of older employees within the Division of Architectural Services. These facts are sufficient to create a *prima facie* case.

The defendants next contend that neither the State of Kansas nor the Department of Administration can be held liable for any illegal conduct by DeVilbiss. Defendants argue that the State or the Department cannot be held vicariously liable for a violation of ADEA. Defendants suggest that plaintiffs must demonstrate they were discharged pursuant to a custom or policy adopted by the State in order for liability to be assessed against the State or the Department. Plaintiffs respond that defendants are attempting to attach liability standards under 42 U.S.C. § 1983 to the ADEA. Plaintiffs note the contradictory aspect of the defendants' arguments in that not only are agents of the State not liable for discriminatory conduct, but that the State is likewise free from liability if the agents of the State act with discriminatory animus.

The defendants' argument is wholly without merit. In employment discrimination actions alleging wrongful discharge, an employer is strictly liable for a decision made by a supervisor if that supervisor acted within the apparent scope of the authority entrusted to him by the employer.

*Shager v. Upjohn Co.,* 913 F.2d 398, 404–05 (7th Cir.1990); *North v. Madison Area Ass'n For Retarded Citizens–Developmental Centers Corp.,* 844 F.2d 401, 407 (7th Cir.1988); *Henson v. City of Dundee,* 682 F.2d 897, 909 (11th Cir.1982); *Suarez v. Illinois Valley Community College,* 688 F.Supp. 376, 379–80 (N.D.Ill.1988). As explained in *Shager:*

> The deliberate act of an employee acting within the scope of his authority is the act of the employer, for an employer, at least where it is a corporation, acts only through agents. (citations omitted). This much derivative liability (if that is what it should be called) surely survives the *Meritor [Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ] line of cases; if it did not, the Age Discrimination in Employment Act would have a very soft bite indeed.

913 F.2d at 404–05.

As further explained in *Suarez:*

> Where that individual happens to be a government official, the government entity for which he works will also be liable, not because the official necessarily acted pursuant to the entity's custom or policy, but rather because the entity, as the official's employer, is also an "employer" under the statute [Title VII].

688 F.Supp. at 380.

In sum, the court finds no merit to the defendants' argument. The State and the Department are liable for the acts of DeVilbiss since he was delegated the authority by the State and the Department to terminate employees.

Finally, defendants contend that they are entitled to summary judgment on plaintiffs' claims under the KADEA because they failed to exhaust their administrative remedies. Plaintiffs assert that they did adequately exhaust their administrative remedies.

The following uncontroverted facts are pertinent to this argument. Plaintiffs were terminated or notified of their termination from employment on February 25, 1988. Each of the plaintiffs filed administrative complaints with the Kansas Commission on Civil Rights (KCCR) on August 23, 1988. On March 3, 1989, plaintiffs filed this action alleging claims of age discrimination under the ADEA. On April 24, 1989, the KCCR notified plaintiffs that they were dismissing their administrative complaint pursuant to K.A.R. 21–41–10. This regulation provides as follows:

> When a complainant institutes either criminal or civil proceedings on a matter pending before the Commission, the Commission may, in its own discretion, suspend or dismiss action on a complaint based on the same matter.

Following the dismissal of their administrative complaints, plaintiffs sought to amend their complaint in this action to add claims under the KADEA. The court granted plaintiffs' motion to amend.

The circumstances of this case are very similar to those in *Freeman v. Kansas State Network, Inc.,* 719 F.Supp. 995 (D.Kan.1989). In *Freeman,* Judge Saffels found that the plaintiff had exhausted her state administrative remedies where she did not add a cause of action under the Kansas Act Against Discrimination until after the KCCR dismissed her administrative complaint pursuant to K.A.R. 21–41–10 because she had filed a complaint in federal court asserting a Title VII claim. 719 F.Supp. at 998.

The court finds that the rationale of *Freeman* is applicable here. Here, plaintiffs did not raise their KADEA claims until the doors of the KCCR had been closed to them. Under such circumstances, we find that plaintiffs exhausted their administrative remedies. Accordingly, the court shall reject the defendants' argument.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment be hereby granted in part and denied in part. Defendant DeVilbiss is hereby dismissed from this action for lack of jurisdiction. Plaintiffs' claims against the remaining parties shall proceed to trial.

IT IS SO ORDERED.