Antoinette O. WALTERS, Plaintiff,

v.

COUNTY OF SCHUYLKILL, and Gary L. Hornberger, Defendants.

No. Civ.A. 399CV1467.

United States District Court,
M.D. Pennsylvania.

Jan. 16, 2001.

Robert J. Magee, Allentown, PA, for plaintiff.

Hugh J. Hutchison, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

CONABOY, District Judge.

This matter comes before the Court on Defendants' motion for summary judgment. (Doc. 15). Plaintiff filed the above-captioned matter [1] asserting claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.S.A. § 951 et seq. Plaintiff further claims that she was politically discriminated against pursuant to 42 U.S.C. § 1983. For the reasons set forth *infra*, we shall grant the Defendants' motion.

### BACKGROUND

Plaintiff, Antoinette Walters, began working for Schuylkill County in 1985, where she held the position of Payroll/Benefits Clerk. (Doc. 23, Walters Deposition, N.T., 19). Plaintiff is a politically active Democrat who serves as an elected Democratic Committee person. (Doc. 23, Walters Deposition, N.T. 117). At the time of the challenged employment decision, Plaintiff was responsible for handling the manual payroll and benefits functions for the County.

On January 2, 1996, Defendant Gary Hornberger, a Republican, assumed office to serve as the County Controller of Schuylkill County. (Doc. 23, Hornberger Deposition, N.T. 6–7). From January 2, 1996, until July of 1998, the Plaintiff worked under the supervision of Defendant Hornberger. (*Id.*, N.T. 21)

Upon his entry into office, Defendant Hornberger determined that certain changes needed to be implemented within the office. Specifically, Defendant Hornberger decided the manual payroll system should be replaced with a new computerized payroll system, and that any payroll/benefits functions should be transferred from the Controller's Office to Human Resources. (Doc. 23, Hornberger Deposition, N.T. 27–28, 44–45). As a result, Plaintiff was made aware that her position as Payroll/Benefits Clerk in the Controller's Office would be eliminated in 1998. (Doc. 23, Walters Deposition, N.T. 65–67). Plaintiff's understanding that her position would no longer be part of the Controller's Office was confirmed by the 1998 budget submissions. *Id.*

Plaintiff alleges in late 1997, or early 1998, the new computerized payroll system in Human Resources was being installed. Due to the necessity of keeping up the manual payroll, Plaintiff continued to perform her job duties, while simultaneously another county employee, Carol Leashefski, worked on setting up the new computerized system. Plaintiff testified at her deposition that it was necessary to continue doing the manual system during the

---

**1.** Plaintiff initially filed her complaint in the Court of Common Pleas of Lehigh County, the action was later removed to the United States District Court for the Eastern District of Pennsylvania. On July 2, 1999, both parties agreed to transfer the action to the Middle District of Pennsylvania. In addition, a stipulation was entered by both parties to dismiss Count IV of Plaintiff's complaint.

transition period because there was no other way to maintain the payroll system. (Doc. 23, Walters Deposition, N.T. 63–65).

Carol Leashefski was bumped from her previous position in the Office of the Treasurer, and on January 5, 1998, she was hired as a temporary employee to help implement the new computer system that would handle the new payroll system.[2] (Doc. 23, Hornberger Deposition, N.T. 59–62). Leashefski, like the Plaintiff, is also a politically active Democrat. She is an elected committeewoman and an elected member of the Executive Board of the Schuylkill County Democratic Party. (Doc. 18, Leashefski Deposition, N.T. 39–40). Leashefski began implementing the new computer system in January of 1998 (Doc. 23, Walters Deposition, N.T. 63). Leashefski was later hired in October of 1998 to fill a new permanent position as Payroll Analyst in Human Resources, and another county employee was placed in charge of benefits. (Doc. 18, Leashefski Deposition, N.T. 43–44, 47, 53).

Plaintiff alleges that Leashefski was given Plaintiff's full time position even though Leashefski had no payroll or benefit experience. (Doc. 21). Plaintiff also claims that she herself "had most of the skills" necessary to fulfill the new full-time payroll analyst position. Id. However, Plaintiff admits that prior to July of 1998, she had "very little" experience with computers, and that she was basically unfamiliar with word processing, and spreadsheets, etc. (Doc. 23, Walters Deposition, N.T. 13–18).

In July of 1998, the Plaintiff was discharged following the elimination of her Payroll/Benefits Clerk position. Plaintiff was considered to have satisfactorily performed her duties as Payroll/Benefits Clerk. (Doc. 23, Hornberger Deposition, N.T. 23–24). At the time of Plaintiff's discharge, the full-time payroll analyst position did not exist.

In July of 1998, Plaintiff was sixty (60) years of age, Carol Leashefski was fifty-five (55) years of age, and Charles. Daubert[3] was sixty-three (63) years of age.

## DISCUSSION

Summary Judgment is a method of final disposition of a case where there are no factual disputes. We follow considerable guidance in determining whether summary judgment should be granted. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir.1997) (*citing* Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

These rules make it clear then, that in order for a moving party to prevail on a motion for summary judgment, the party must show two things: (a) that there is no genuine issue as to any material fact, and (b) that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This instructs us that a fact is "material" if proof of its existence or nonexistence would effect the outcome of the lawsuit under the law applicable to the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Levendos v. Stern Entertainment Inc.,* 860 F.2d 1227, 1233 (3d Cir.1988). We are further instructed that an issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a ver-

---

2. Leashefski had prior computer experience working in the office of County Treasurer, where she began using computers in 1993. (Doc. 18, Leashefski Deposition, N.T. 9–17).

3. In January of 1996, Defendant Hornberger hired Charles Daubert as a deputy controller. (Doc. 18, Daubert Deposition, N.T. 3).

dict for the non-moving party. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Hankins v. Temple University,* 829 F.2d 437, 440 (3d Cir.1987); *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir.1987).

Under this regime that we follow, the Court is required to view the evidence in the light most favorable to the non-moving party. However, the non-moving party may not rest on the bare allegations contained in his or her pleadings. Once the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fact, *see Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), the nonmoving party is required by Federal Rule of Civil Procedure 56(e)[4] to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corporation v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark, supra* at 144.

## A. LIABILITY UNDER THE ADEA

■ The parties' burdens in establishing and defending ADEA[5] claims has been set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Stanziale v. Jargowsky,* 200 F.3d 101, 105 (3d Cir.2000); *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In a pretext case,[6] the plaintiff must first produce evidence sufficient to convince a reasonable factfinder as to all of the elements of a prima facie case of discrimination. In order to establish a prima facie case under the ADEA, a plaintiff must prove that: (1) she belongs to a protected class—over age 40; (2) she was qualified for the position in question; (3) she suffered an adverse employment decision; and (4) the position was filled by someone sufficiently younger to permit an inference of age discrimination. *See Narin v. Lower Merion School Dist.,* 206 F.3d 323, 331 (3d Cir.2000); *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.1995).

If a plaintiff establishes a prima facie case, "the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision." *Stanziale,* 200 F.3d at 105 (internal citations omitted). The plaintiff then has "the opportunity to

4. In relevant part, Rule 56(e) states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

5. The ADEA states in relevant part:

It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.... 29 U.S.C. § 623(a)(1), (2).

6. Because the Plaintiff alleges her job elimination was a pretext for age discrimination, we shall not address the distinction between a "pretext" or "mixed motives" case. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Thus, we shall view the evidence under the framework of *McDonnell Douglas.*

demonstrate that the employer's stated reasons were not its true reasons but were a pretext for discrimination." *Sempier,* 45 F.3d at 728. At all times, the ultimate burden of proving intentional discrimination remains with the Plaintiff. *Hicks,* 509 U.S. at 507, 113 S.Ct. 2742; *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644 n. 6 (3d Cir.1998).

### 1. DEFENDANT HORNBERGER

The Defendants argue that Defendant Hornberger is not subject to the ADEA because he is not an "employer" as defined by the statute. Moreover, the Defendants note that the Plaintiff concedes that the weight of the caselaw favors the Defendants' position.

The ADEA defines "employer" as: "a person engaged in an industry affecting commerce who has twenty or more employees ... and (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or political subdivision of a State." 29 U.S.C. § 630(b). Many Courts have found that individual agents of state agencies do not fall under the ADEA's definition of employer. *See Pierce v. Philadelphia Housing Auth.,* 1995 WL 447614, *2 (E.D.Pa.1995) (individual agents of the Pennsylvania Housing Authority, a state agency, are not considered "employers" and are not subject to the ADEA); *Ditch v. Bd. Of County Comm'rs of County of Shawnee,* 650 F.Supp. 1245, 1251 (D.Kan.1986) (as Congress made no provision for agents of states and political subdivisions, the court reasoned that Congress could have easily added the phrase "and their agents" in 29 U.S.C. § 630 to express Congress' intent to hold individuals liable for age discrimination); *Tranello v. Frey,* 758 F.Supp. 841, 851–52 (W.D.N.Y.1991); *Wanner v. State of Kan.,* 766 F.Supp. 1005, 1007 (D.Kan. 1991).

In the instant case, we do not find the Plaintiff's limited argument or reliance on two district cases to be persuasive. Furthermore, we find that Defendant Hornberger as County Controller, clearly works as an individual agent for a political subdivision of the state, thus, he is not subject to the Plaintiff's ADEA claim. In reality, the Plaintiff was an employee of the other Defendant, the County of Schuylkill. Accordingly, Defendants' motion for summary judgment shall be granted with respect to the ADEA claim against Defendant Hornberger.

### 2. PRIMA FACIE CASE

Here, both parties agree that Plaintiff satisfies the first element of her prima facie case,[7] however, both parties disagree about the remaining three elements. With respect to elements two and three, the Defendant argues that the Plaintiff was not qualified to handle the payroll function because the manual payroll system that she was familiar with, was replaced by a computerized payroll system. The Defendant further argues that Plaintiff made no effort to upgrade her skills, had no understanding of basic computer technology, and relied on others in the Controller's Office to perform data entry during her tenure as the payroll/benefits clerk. (Doc. 17).

In an effort to counter the argument made by the Defendant, the Plaintiff argues that the person who subsequently took over the payroll function had only limited computer skills and absolutely no payroll or benefit experience. (Doc. 21). Plaintiff further argues that no one in the county knew the new payroll system, and more importantly, "the essential function of the job was the use of a computer keyboard to input data onto a form on the computer, where the Plaintiff was acknowledged to have years of experience using a

---

**7.** Plaintiff was born on June 27, 1938, therefore, she was sixty (60) years of age when she

was terminated in July of 1998.

typewriter to 'input' data on a printed form." *Id.*

Here, the Defendant concedes that Plaintiff satisfactorily performed her job handling the manual payroll system, and was therefore qualified to handle the manual system. It should be noted that as the Controller's Office was undergoing a reorganization and implementing a new computerized system for data entry, the Plaintiff simultaneously continued to manually maintain the payroll.[8] However, Plaintiff's position was eventually eliminated because of budgeting (Doc. 23, Walters Deposition, N.T. 65–67), and the position of payroll/benefits clerk ceased to exist as of July, 1998. Moreover, as the new payroll system was implemented, there was no longer a need to sustain the manual system. (*Id.*, N.T. 64–65). Consequently, the Defendant argues that Plaintiff's unfamiliarity with using a computer rendered her unqualified with respect to the new computerized payroll system.

■ Even if we were to assume Plaintiff was treated unfairly, she has not presented any evidence to support a finding that such treatment was the result of her age. Although the Plaintiff is not required to prove she was replaced by someone outside her class in order to make out a prima facie case of age discrimination, she must "establish that the position was filled by someone sufficiently younger to permit an inference of age discrimination." *Narin,* 206 F.3d at 331. Here, the Plaintiff alleges that her previous job duties were divided between two individuals, Carol Leashefski (payroll), who was five (5) years younger, and Kathy Setlock (benefits), who was eight (8) years younger. (Doc. 21). As there is no formula or specific number of years that must be represented to constitute "sufficiently younger", some courts have found that a five year

difference can be sufficient, but that a one year difference cannot. *Sempier,* 45 F.3d at 729 (citations omitted). In reply, the Defendant argues that the county hired a Deputy Controller in 1996 who is three years older than the Plaintiff,[9] which rebuts any inference of age discrimination.

Even as we consider the evidence in the light most favorable to the Plaintiff, we cannot reasonably conclude that the evidence set forth demonstrates any adverse employment decision was made on the basis of Plaintiff's age. Rather, the record shows that the decision was made on the basis of reorganization, personal ability, and personnel need. Consequently, we find that Plaintiff has failed to state a prima facie case under the ADEA.

## 3. REASON FOR TERMINATION

Even if we were to assume that Plaintiff has satisfied her prima facie burden, her claim still fails because she cannot as a matter of law, establish that the Defendant's articulated reason for terminating her employment was a pretext for intentional age discrimination. An employer has a "relatively light burden," *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994), when proffering a legitimate reason for an adverse employment decision.

In this case, the Defendant has offered a series of reasons for eliminating the Payroll/Benefits Clerk position. Namely, that after Defendant Hornberger took office he felt it was necessary to update the technology of the office. Specifically, Defendant Hornberger decided that the manual payroll system was outdated, and should be replaced by a computerized payroll system. In addition, as part of the restructuring of the Controller's Office, it was determined that the position of Payroll/Benefits Clerk would be eliminated

---

8. Plaintiff testified in deposition that it was necessary to continue utilizing the manual system during the transition period involving the data entry into computers. (Doc. 23, Walters Deposition, N.T. 63–64).

9. Plaintiff was born on June 27, 1938, and the Deputy Controller who was hired *after* Plaintiff, Charles Daubert was born on October 26, 1934. (Doc. 18, Daubert Deposition N.T. 3, 6).

from the 1998 budget for the Controller's Office, as Defendant Hornberger felt the payroll and benefit functions would be more appropriately handled in Human Resources. (Doc. 23, Hornberger Deposition, N.T. 27–28, 44–45).[10]

The Defendant further argues that the Plaintiff was aware of the decision to replace the manual system with a new computerized payroll system.[11] Specifically, the Defendant contends that Plaintiff was aware her job would eventually be eliminated, and she herself admits that the County's implementation of the computer system was directed towards achieving a more efficient and economic payroll. (Doc. 23, Walters Deposition, N.T. 62). The Defendant also contends that the decision to eliminate the payroll/benefits clerk position from the Controller's Office and to replace the manual payroll system was not based on any personal animosity towards the Plaintiff. (*Id.*, N.T. 41, 62, 114–115).

Plaintiff also concedes that the transfer of the payroll and benefits function to Human Resources and the computerization of the payroll system were legitimate. (Doc. 21). In their reply, the Defendant maintains that Plaintiff's very concession supports their argument that there was a legitimate, nondiscriminatory reason for eliminating the Payroll/Benefits Clerk position.

Although the Plaintiff argues that the proper inquiry is "why a younger individual was given the Plaintiff's job of payroll/benefit clerk," the Defendant points out that the position of Payroll/Benefits Clerk was not given to anyone, rather it was eliminated from the County on July 5, 1998. (Doc. 23, Walters Deposition, N.T.

91–92). Specifically, the Defendant argues that in October of 1998, Carol Leashefski was named to a newly created position as a Payroll Analyst. (Doc. 18, Leashefski Deposition, N.T. 44–47).

With respect to Plaintiff's allegation that Carol Leashefski "received" Plaintiff's position, a review of the record reveals that the evidence does not dispute Defendant's proffered explanation that the County was undergoing some restructuring which ultimately led to the elimination of Plaintiff's position and the creation of a new position. It should be noted that Plaintiff's job description when she was a Payroll/Benefits Clerk lists the *Controller's Office* as the Department she worked for and she was required to report to the *Deputy County Controller.* (Doc. 23, Exhibit C). In the alternative, the job description for Carol Leashefski's job as Payroll Analyst lists the *Human Resources Office* as the Department she worked for and she is required to report to the *Human Resources Director.* (Doc. 23, Exhibit H).

Despite Plaintiff's argument that Leashefski was unfamiliar with the payroll system, it is apparent that Leashefski was actively involved in the implementation of the new payroll system. Specifically, when Leashefski was temporarily assigned to implement the new computerized system, Plaintiff was simultaneously maintaining the manual payroll. Thus, as the new payroll system was implemented there was no longer a need to sustain the manual system. (Doc. 23, Walters Deposition, N.T. 64–65). Furthermore, as Plaintiff was unfamiliar with using computers, she was not qualified to use the new computer-

---

10. It should be noted, Defendant Hornberger expressed to the Plaintiff that her position would be eliminated from the Controller's Office, which would have the effect of creating a job in Human Resources. Defendant Hornberger further stated that he would not have the authority to appoint the Plaintiff to such a position in Human Resources as that decision was ultimately left to the commissioners. (Doc. 23, Hornberger Deposition, N.T. 46–47).

11. Plaintiff confirmed through her deposition testimony that she was both aware of Defendant Hornberger's intention to eliminate the payroll/ benefits clerk position from the controller's office, as well as the time frame when such action would take place. (Doc. 23, Walters Deposition, N.T. 66–67).

ized payroll system.[12] Therefore, Leashefski who had previous computer experience and worked on the new computer system beginning in January of 1998, was then given the position of payroll analyst in October of 1998. *See Henson v. Liggett Group, Inc.*, 61 F.3d 270, 277 (4th Cir. 1995) (Court held that an Employer's decision to convert a temporary position into a permanent position and retain the temporary employee who had at least a year of on-the-job experience and was performing satisfactorily was not evidence of age discrimination).

The Defendant further argues that following the elimination of the Payroll/Benefits Clerk position, the employee benefits functions were handled by an existing employee in the Human Resources Department. (Docs. 25, 18—Leashefski Deposition, N.T. 53). Consequently, the Defendant argues that this function was merely added to the list of responsibilities of someone already employed by the County.

■ To survive summary judgment, a plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes*, 32 F.3d at 764 (citations omitted). To demonstrate that "discrimination was more likely than not a cause for the employer's action, the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision." *Simpson*, 142 F.3d at 644–45 (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d Cir.1997)).

Plaintiff's evidence concerning the circumstances surrounding the restructuring of the County positions fails to demonstrate the Defendant was targeting Plaintiff on the basis of her age when her position was eliminated. Moreover, the deposition testimony of Plaintiff confirms that she is unable to point to any evidence indicative of age discrimination. Plaintiff's deposition testimony states in relevant part:

Q: Do you believe that you were discharged because of deficiencies in your performance?

A: (Plaintiff) No.

Q: Did anybody ever say anything to you that would support a . . . conclusion that your age played a role in your discharge?

A: No.

Q: Did anybody—or did you ever see any writing of any kind that would support a conclusion that your discharge was a function of your age?

A: No.

Q: Is there anything that you can think of that would support the conclusion that your age was a determining factor, make it a substantial factor, in your discharge that we haven't already talked about?

A: No.

Q: If you could recap then, what specifically is it that makes you think that it was your age that was a substantial factor in the decision to discharge you?

A: My job performance.

. . .

(Doc. 23, Walters Deposition, N.T. 107–108).

■ Because the Plaintiff has failed to allege that she or any other members of her protected class had been discriminated against at any other time, and because she has presented no evidence that her position was filled by someone "sufficiently

---

**12.** Plaintiff testified after her discharge and prior to getting a computer in her home, she had no previous experience with computers. Plaintiff further testified that she was some-what unfamiliar with word processing and spreadsheet programs. (Doc. 23, Walters Deposition N.T. 13–18).

younger," we cannot find that she was discriminated against because of her age. Specifically, we find the Plaintiff has failed to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence', and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons'." *Fuentes*, 32 F.3d at 765 (citations omitted). Therefore, given the scarcity of evidence presented by the Plaintiff to support her allegation of age discrimination, we cannot reasonably infer that the Defendant's reasons for Plaintiff's termination were a pretext for discrimination. Accordingly, summary judgment shall be granted with respect to this claim.

## B. STATE AGE DISCRIMINATION CLAIM

Under Count Two of Plaintiff's complaint, she sets forth a cause of action for age discrimination pursuant to the Pennsylvania Human Relations Act, 43 P.S. §§ 955 and 962 (hereinafter "PHRA"). Similar to the ADEA, the PHRA makes it unlawful for an employer to discriminate against employees on the basis of their age. *See* 43 P.S. § 955. Consequently, as the analytical framework of an action under the PHRA is similar to a claim under the ADEA, the discussion of Plaintiff's ADEA claims would equally apply to her PHRA claim. Accordingly, Plaintiff's PHRA claim must fail and Defendants' motion for summary judgment on the PHRA claim shall be granted.

## C. POLITICAL DISCRIMINATION

Plaintiff's final claim is that the Defendants have politically discriminated against her in violation of 42 U.S.C. § 1983. Initially, it should be noted that in Plaintiff's

brief in opposition to the Defendants' motion for summary judgment, her claim of political discrimination is never addressed. Specifically, the final sentence in the conclusion of Plaintiff's brief states "[f]or all the reasons here and above set forth it is respectfully submitted that the Defendants' Motion for Summary Judgment, *as to the age discrimination claims*, both State and Federal should be denied." (Doc. 21) (emphasis added). Therefore, it appears to the Court that Plaintiff does not oppose the Defendants' motion for summary judgment insofar as it relates to the political discrimination claim. Furthermore, even as we review the record it is apparent Plaintiff's claim is devoid of merit.

In considering political discrimination cases [13] we utilize similar burden-shifting mechanisms as those used in other employment discrimination contexts. *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir.1997). To make out a prima facie case, "public employees who claim that they suffered from an adverse employment action based on their exercise of a constitutional right must show that they worked for a public agency in a position that does not require a political affiliation, that they were engaged in constitutionally protected conduct, and that the conduct was a substantial or motivating factor in the government's employment decision." *St. Germain v. Pa. Liquor Control Bd.*, 2000 WL 39065, *4 (E.D.Pa.2000) (*citing Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir.1995)). An employer may avoid liability by proving by a preponderance of the evidence that the same employment decision would have occurred even in the absence of the protected activity. *Kerrigan*, 122 F.3d at 176.

In the instant case, Plaintiff's claim that she was terminated due to political motivation appears to be nothing more than an unsupported general allegation. In es-

---

13. *See Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (unconstitutional for public agen-

cies to discharge employees who are neither policymaking nor advisory based on their political affiliation).

sence, her claim of political discrimination is based on the following:

Q: ... what is the basis for saying that there were political motivations [for Plaintiff's termination—the elimination of the payroll/benefits clerk position]?

**A. As I said, I performed my job. I do not know what the bases were for my termination.**

Q: Even granting that, is there some reason why you would include an allegation that there were political motivations?

**A. Mr. Hornberger is a different party affiliation than I am.**

Q: I think that's kind of what I was asking. Is that the basis for it, that he's a different party affiliation?

**A. Yes.**

Q: Is there anything else?

**A. No.**

...

(Doc. 23, Walters Deposition 115–116).

Although Plaintiff was affiliated with the Democratic Party and Defendant Hornberger was affiliated with the Republican Party, it is worth noting that the very person who allegedly "received" Plaintiff's job position, Carol Leashefski, is also a Democrat and an elected Democratic Committee person. (Doc. 18, Leashefski Deposition, N.T. 39–40). Therefore, Plaintiff was allegedly replaced by a politically active employee in her own political party.

■ A review of the record reveals, the Plaintiff has not produced any evidence to support a finding that the Defendants terminated her because of her political affiliations. As we have already extensively addressed the circumstances and reasons proffered by the Defendants surrounding the Plaintiff's termination, we do not feel it is necessary to revisit these matters. Consequently, as the Plaintiff fails to raise any genuine issue of material facts, we shall grant the Defendants' motion for summary judgment with respect to her political discrimination claim.

Loss of employment is always a critical and often an emotional event. Indeed, the statutes and laws we discussed, were implemented to prevent termination of employment—or firing—for improper motives such as age or political party affiliation. But employers—particularly new employers—often reorganize and restructure their operations to be more efficient and often less costly. This sometimes causes decreases in employment. However, those who suffer loss of employment and who claim that loss was caused improperly—must do more than merely assert discrimination. They must be able to produce proof that employers acted improperly—not only that their jobs were eliminated or that they lost employment.

In the legal context, summary judgment provides the opportunity for the plaintiffs to show what proof they have and it also gives defendants an opportunity to explain their actions. Done in the context we explain herein and prescribed by Appellate Court decisions, it gives the trial court an opportunity to see if the case should continue to full trial and added burdens to both parties.

Here the record fully demonstrates that the Plaintiff cannot fulfill the burden of proof required by the law. The reasons stated for the changes—loss of positions and ultimate loss of Plaintiff's job, are all reasonably stated and the Plaintiff offers no explanation other than a personal feeling that the actions were age or politically motivated. The law requires much more and in the absence of proof the case cannot proceed against the named parties.

## CONCLUSION

Based on the aforementioned reasons, Defendants' motion for summary judgment is hereby granted.

## ORDER

NOW, this 16th Day of JANUARY, 2000, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 15) is GRANTED;

2. Defendants' motion to extend time to file a statement of material facts (Doc. 16) is deemed MOOT;

3. The Clerk of Court is directed to close this case.

4. The Clerk of Court is directed to mark the docket.